FILED 5 MAR '24 10:08USDC-ORP

ANDREA MORROW 13360
SE 122 AVE APT A2
CLACKAMAS OR 97015
morrowan@gmail.com
(971) 406-9057

## UNITED STATES DISTRICTCOURT

## FOR DISTRICT OF OREGON

| ANDREA MORROW<br>Plaintiff<br>v.<br>Defendants<br>Genius Fund, Liam Palmieri, Chris Finelli, and Ari Stiegler, Federal Bureau of Investigation ("FBI"), LinkedIn, USA Today, Tami Abdollah, and John Does 1-10, inclusive, | third<br>**AMENDED COMPLAINT**<br>**CIVIL ACTION NO.**<br><br>3:24-cv-00039-SB<br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |
|---|---|

Plaintiff, Andrea Morrow, hereby states and alleges as follows:

### I. INTRODUCTION

This is an action for inter alia damages and injunctive reliefs arising out of the malicious, intentional, orchestrated and negligent acts of the Defendants, Genius Fund, Liam Palmieri, Chris Finelli, and Ari Stiegler, Federal Bureau of Investigation ("FBI"), LinkedIn, USA Today aka Gannett Co., Inc., Tami Abdollah, and John Does 1-10, inclusive, (collectively, "Defendants"), involved in unlawful stalking, computer hacking, doxing,

invasion of privacy and dignity, negligent infliction of emotional distress, medical abuse, and other heinous acts towards Plaintiff over a span of several years, shortly after Plaintiff reported unusual events starting in 2021.

PARTIES

1. Plaintiff, Andrea Morrow, is a citizen residing in Oregon, and is the victim of the actions described herein.

2. Defendants, Genius Fund, Liam Palmieri, Chris Finelli, and Ari Stiegler, Federal Bureau of Investigation ("FBI"), LinkedIn, USA Today, Tami Abdollah, and John Does 1-10, inclusive, are all Defendants in this civil action residing in various states which are subject to the jurisdiction of this federal judicial district where the conduct described was in combination of the two states, finalized and herein co-occurred.

3. Defendant Genius Fund is a private equity fund and LLC, registered in the State of Delaware and doing business in the State of California, County of Los Angeles.

4. Defendant Liam Palmieri is an individual residing in the State of California, County of Los Angeles.

5. Defendant Chris Finelli is an individual residing in the State of California, County of Los Angeles.

6. Defendant Ari Stiegler is an individual residing in the State of California, County of Los Angeles.

7. Defendant Tami Abdollah is an individual residing in the state of California, County of Los Angeles.

8. USA Today aka "Gannet Co., Inc." is a Corporation registered in the State of Delaware and doing business in the State of California.

9. LinkedIn is a Corporation registered in the State of Delaware and doing business in the State of California.

10. The FBI is an agency of the Federal Government.

11. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants named herein as DOES I through 10, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each such DOE defendants are responsible in some manner for the events and transactions alleged herein and Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants when they have been ascertained.

## Jurisdiction and Venue

1. Jurisdiction exists under 28 U.S.C. § 1332 as this is an action between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

2. Venue is proper under 28 U.S.C. § 1391 as all defendants reside in Oregon, the property at issue is located in Oregon and a substantial part of events giving rise to the claim occurred in Oregon.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because the action arises under the CFAA, Pub. L. No. 99-474, 100 Stat. 1213 (Oct. 16,1986) (codified as amended at 18 U.S.C. § 1030).

## Factual Allegations

4. Plaintiff was an employee of Genius Fund on or about the year 2019. Plaintiff was forced to leave her job due to blatant discrimination against her based on her gender and against this contextual background, the Plaintiff has been a victim of numerous heinous acts as will be detailed hereunder.

5. That Liam Palmieri was the above mentioned Fund's Chief Executive Officer (CEO), Chris Finelli being the Chief Sales Officer (CSO) and Ari Stiegler being a Managing Partner (MP).

6. The Plaintiff herein served as the Lead Sales on every platform at Genius Fund and to this end she delivered superbly. However, her illustrious career was cut short when it became apparent that the aforementioned company heads (CEO, CSO) were deliberately impeding her work in a concerted effort to have her replaced by a male employee.

7. Eventually on or about the year 2019, the Plaintiffs time at the company was cut short and this marked the beginning of a series of unfortunate and patently illegal activities against her physical and online presence all in an apparent bid to stalk, control and censure her.

8. The Defendant, Tami Abdollah, worked for USA Today. She wrote a hit article on the rise and fall of Genius Fund wherein she interviewed everyone. Defendant has connections with the FBI and within the previous company. Plaintiff has been subjected to countless hackings and this clearly has a nexus with her correspondences with Tami and it is clear collectively that she is part of a concerted effort to censure her.

9. The string of unfortunate events against the Plaintiff spans back over 4 years and the Plaintiff seeks this Honourable Courts intervention in aiding her pursuit of justice as her attempts to raise the issues with relevant investigative and oversight authorities have failed to bear any fruit.

10. The Plaintiff after leaving Genius Fund returned to Los Angeles on or around February 2021 when ALL of her accounts were overrun. This includes large professional networking sites such as LinkedIn and social sites such as Twitter and Facebook.

11. This essentially erased any and all of her social media and net reputation presence and this she later came to find out was the Defendants doing, to wit Genius Fund, The Federal Bureau of Investigations, LinkedIn and various John Does who have incessantly stalked her.

12. That on or around October 2021, the Plaintiff met Tami for coffee, this was the same week Plaintiff realized she was being raped and was almost taken/murdered in an attempted trafficking incendent. Four months later on or around February 2022 they spoke again where Tami informed her of the existence of a trial where the Plaintiff was a party. She further divulged that the Plaintiff had actively participated in said trial and stated "Plaintiff said in the trial she was going home to work on her mental health" which statement was shocking as the Plaintiff was not even aware of the existence of any suit/action where she was a party. This date was after an entire year of being stalked, hacked, raped, followed and almost taken/murdered.

13. The sham trial was conducted in her absence where apparent adverse orders were issued and the Plaintiff's every attempt at obtaining further details about said case have been unsuccessful thus far. Tami proceeded to cut off any and all communication with the Plaintiff and the simple fact is all she had to do was pick up the phone and Plaintiffs woes would have ceased two years ago. Further attempts to engage Tami and the FBI to obtain information pertaining to said case have been futile.

14. On or around five days after speaking with Tami for the second time, Plaintiff was subjected to a year of medical abuse and/or malpractice and her online presence had been completely erased/ all of her accounts were hacked, her calls diverted and phones interfered with.

15. Tami Abdollah, worked with USA Today and the FBI and engaged in a disturbing pattern of conduct that directly contributed to the plaintiff's victimization.

16. Plaintiff was ruthlessly stalked, systematically hacked, and subjected to egregious medical abuse over the last three years, during which Tami Abdollah was intricately involved.

17. That Tami Abdollah not only ignored but deliberately withheld crucial evidence that would have unequivocally established Plaintiff's innocence during a fraudulent trial in Los Angeles which single handedly led to two more years of abuse in Portland.

18. On or about February of 2021, Plaintiff's personal computer and phone were clandestinely taken over, rendering Plaintiff utterly helpless. Among other things, Plaintiff's LinkedIn account was completely taken over. Plaintiff was being hoaxed/baited and groomed by men through the site while being controlled and hacked at the same time eventually leading to the attempted murder and trafficking incident, the account was eventually locked. Plaintiff had Defendants' confessions in her accounts. On information and belief, Defendants eventually locked Plaintiff's accounts to prevent her from revealing her evidence.

19. Despite fervent calls and emails for assistance, Tami Abdollah failed abysmally to take appropriate action or escalate the matter to the necessary authorities. Astonishingly, after the implicated company closed its doors, Tami Abdollah, instead of aiding Plaintiff, assisted by withholding critical documents needed which allowed for the following two years of framings, abuse and/or malpractice, relentless stalking, and unwarranted hacking in Oregon to take place.

20. This further exacerbated the Plaintiff's plight, damaging Plaintiff in an amount in excess of the jurisdictional limits of this Court.

21. To this date, LinkedIn, the FBI and Liam Palmieri's mother have not only confessed to

their involvement but also refuse to answer Plaintiff's messages or provide Plaintiff with necessary information

22. That consequently, the Plaintiff seeks to implore this Honourable Court to be pleased to screen and find that the following claims are merited and the Plaintiff deserving of remedial actions over the same.

## FIRST CLAIM FOR RELIEF
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
(All Defendants)

23. Ms. Andrea Morrow re-alleges and incorporates by reference all preceding paragraphs.

24. The CFAA prohibits the unauthorized access of a protected computer. The CFAA provides for a civil cause of action when the unauthorized access of a protected computer causes damage or loss, and causes (1) loss to 1 or more persons during any 1- year period of $5,000 or greater, (2) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals, (3) physical injury to any person, (4) a threat to public health or safety, (5) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security, or (6) damage affecting 10 or more protected computers during any 1-year period.

25. The acts alleged herein constitute numerous violations of the CFAA by Defendants Genius Fund, Liam Palmieri, Chris Finelli, Ari Stiegler, the Federal Bureau of Investigations and Linkedn. Ms. Andrea Morrow's mobile device is a protected computer because it is "used in or affecting interstate or foreign commerce or communication" by virtue of its connection to the internet.

26. Ms. Andrea Morrow suffered damage and loss due to Defendants' violations,

and the conduct involved: (1) loss aggregating at least $5,000, and in the alternative (2) physical injury to Ms. Andrea Morrow.

A. Violation 1 - 18 U.S.C. § 1030(a)(2)(C)

Defendants intentionally, and without authorization, accessed Ms. Andrea Morrow's mobile device, and as a result of such conduct, obtained information from a protected computer.

27. Access to Ms. Morrow's mobile device was accomplished by remotely hacking and/or sending an exploit and malware to the phone and through Linkedin U.S.-based servers. This malware remained embedded on Ms.Morrow's iPhone capable of viewing content on her device and exfiltrating the data to the Defendants.

B. Violation 2 – 18 U.S.C. § 1030(a)(5)(A)

Defendants violated the CFAA by causing the transmission of a program, information, code, or command, and as a result of such conduct, intentionally caused damage without authorization, to Ms.Morrow's mobile device. Defendants caused the transmission of an exploit to Ms.Morrow's device with the intention of installing malware to the device that would transmit data from her device. This access was without authorization.

28. Defendants caused the transmission of malware to Ms. Morrow's mobile device by retrieving her encryption and routing information from and directing an iMessage containing an exploit and malware to Apple servers in the U.S. As a result, Defendants intentionally caused damage to parts of Ms. Morrow's iPhone by placing malware on the device that routed her data to a

separate server controlled by the defendants.

29. The damage was accomplished by transmitting malware to Ms. Morrow's phone. The intentionality of the damage is established by Defendants' purposeful engagement in cyber stalking/harassment.

C. Violation 3 – 18 U.S.C. § 1030(a)(5)(B)

30. Defendants violated the CFAA by intentionally accessing Ms. Morrow's mobile device without authorization, and as a result of such conduct, recklessly caused damage. Defendants accessed the contents of parts of Ms. Morrow's iPhone by transmitting an iMessage exploit and malware to Ms. Morrow's iPhone.

31. The malware recklessly caused damage because the installation of malicious code was a foreseeable result of directing the exploit to an individual's iPhone.

D. Violation 4 – 18 U.S.C. § 1030(a)(5)(C)

32. Defendants violated the CFAA by intentionally accessing Ms. Morrow's mobile device without authorization, and as a result of such conduct, caused damage and loss. Defendants accessed information from Ms. Morrow's mobile device using embedded malware. The malware sent the data from Ms. Morrow's mobile device to servers controlled by the Defendants. This allowed Defendants to obtain private information contained on Ms. Morrow's iPhone without authorization.

As a result, the Defendants caused damage to parts of Ms. Morrow's iPhone by

compromising the security of the device, and caused loss.

E. Plaintiff Morrow Suffered Loss and Damage under the CFAA.

33. Ms. Morrow suffered damage to her iPhone as defined in 18 U.S.C. § 1030(e)(8) because she suffered impairment to the integrity of the data, and security, on the iPhone by virtue of the hack.

34. Ms. Morrow suffered loss aggregating at least $5,000 in value. This loss includes costs incurred due to responding to the hack, conducting a damage assessment, and attempting to restore data.

35. In addition, as a result of the hack,.Ms. Morrow also lost access to files located on her device as a result of the hack and subsequent arrest. Ms. Morrow lost various employment opportunities due to her failure to access her internet accounts.

36. Ms. Morrow suffered economic loss due the disruption to her life, work and career because the hack enabled the Defendants to control and manage various critical elements of her life.

37. Ms. Morrow suffered physical injury due to the hack and ongoing surveillance because it precipitated her institutionalization under mental health guises where she was forced to undergo medical treatment which was entirely as she has never suffered from any mental issue in her life and is not diagnosed of the same.

## SECOND CLAIM FOR RELIEF

### CONSPIRACY TO VIOLATE THE COMPUTER FRAUD AND ABUSE ACT

(All Defendants)

38. Ms. Morrow realleges and incorporates by reference all preceding paragraphs. By participating together in this conduct, Defendants engaged in a conspiracy to violate the CFAA. An actual or tacit agreement existed between Defendants, to commit violations of the CFAA.

39. Defendants Chris Finelli, Liam Palmieri and Ari Stiegler orchestrated everything and owing to their financial might and connections employed the use of private investigators and abuse of the FBI to stifle the Plaintiffs actions.

40. Defendants Liam , Chris and Ari actively recruited other U.S. persons to aid and abet their misconduct and engage in their illegal cyber operations. They actively assisted in creating a hacking system to knowingly commit violations of the CFAA. By knowingly assisting and engaging in these hacks, Defendants engaged in an actual or tacit agreement to commit violations of the CFAA.

41. Defendants are liable for the foreseeable crimes and other conduct, including the hack on Ms. Morrow, committed in furtherance of the initial conspiracy.

## THIRD CLAIM FOR RELIEF
### CIVIL CONSPIRACY
(All Defendants);

42. The Defendants were engaged in a civil conspiracy where they were all engaged in an unlawful objective, after a meeting of minds where the Plaintiff was undoubtedly injured.

43. That consequently, the Defendants as conspirators and joint tortfeasors are jointly and severally liable for all damages naturally flowing from the conspiracy.

44. "[E]ach defendant is made responsible for the acts of the other in pursuance of the common design." Gettings v. Farr, 41 S.W. 3d 539, 541 (Mo. Ct. App. 2001).

45. Fully cognizant of the position that a conspiracy does not give rise to a civil action itself, something must be done in pursuit of the conspiracy which, absent the conspiracy, would create a right of action against one of the defendants, if sued alone.

46. That the right of actions as against the defendants clearly create an actionable cause for a civil conspiracy as has been averred herein.

## FOURTH CLAIM FOR RELIEF.
### Intentional Infliction of Emotional Distress
### (All defendants)

47. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

48. As described in the incorporated paragraphs, the Defendants' conduct of stalking, hacking and harassing the Plaintiff was intentional, reckless, and Defendant knew or should have known that emotional distress would likely result.

49. The conduct described in the incorporated paragraphs was and is outrageous; that is, it goes beyond all bounds of decency and is and ought to be regarded as odious and utterly intolerable in a civilized community.

50. The conduct described above directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

51. As a direct and proximate result of the foregoing, Plaintiff has suffered severe

and ongoing emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, and loss of capacity for the enjoyment of life, along with consequential damages as a result of the severe distress. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

52. WHEREFORE, Plaintiff, Andrea Morrow, demands judgment against the Defendants both jointly and severally for damages, costs, interest, and other such relief as this Court deems just and proper.

### FIFTH CLAIM FOR RELIEF.
### Invasion of Privacy.
### (All Defendants)

53. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

54. Defendant's unwanted and offensive online hackings with Plaintiff was an invasion of her online solitude and privacy.

55. The invasion of privacy described above directly and proximately caused Plaintiff's injuries in that it directly, and in a natural and continuous sequence, produced or contributed to such injuries.

56. As a direct and proximate result of the foregoing, Plaintiff has suffered bodily injury, emotional distress, mental disturbance, fright, revulsion, humiliation, emotional and psychological pain and suffering, mental anguish, inconvenience, loss of capacity for the enjoyment of life, lost wages, loss of the ability to earn wages, and substantial medical and other expenses for treatment and care, past, present, and future.

57. Said losses, injuries, and expenses are either permanent or continuing in nature and Plaintiff will continue to suffer same in the future.

58. WHEREFORE, Plaintiff, Andrea Morrow demands judgment against the Defendants jointly and severally for damages, costs, interest, and other such relief as this Court deems just and proper.

## SIXTH CLAIM FOR RELIEF.
## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)
### (Against All Defendants)

59. Plaintiff repleads, realleges and incorporates by reference paragraphs 1 through 59 as though fully set forth herein.

60. Defendants and their agents negligently engaged in certain acts as alleged herein and above, which proximately resulted in injury and emotional distress to Plaintiff.

61. At all times material herein, Defendants knew, or in the exercise of ordinary care should have known, that unless Defendants and their agents ceased to engage in the aforementioned acts, or intervened to protect Plaintiff, and to prohibit, control, regulate and/or penalize the conduct of Defendants' agents, as alleged herein, that the conduct would continue, thereby subjecting Plaintiff to personal injury and emotional distress.

62. As a direct, proximate and foreseeable result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has suffered damages including but not limited to loss of wages, and benefits, and consequential damages in an amount to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

63. As a further direct and proximate result of Defendants' actions against Plaintiff, as alleged above, Plaintiff has suffered and continues to suffer general

damages including but not limited to significant and enduring emotional distress including humiliation, mental anguish and physical distress, injury to mind and body, in a sum to be proven at time of trial, in excess of the minimum jurisdictional requirements of this Court.

64. Defendants' intentional act resulted in foreseeable emotional distress to Plaintiff, and the devaluation of over 4 years of her life. Defendants' actions were fraudulent, malicious and oppressive. Plaintiff is thus entitled to and herein seeks punitive and exemplary damages from Defendants, in an amount according to proof at trial, to punish Defendants and deter Defendants and others from engaging in similar future conduct.

65. Punitive damages are available based upon negligent infliction of emotional distress if the plaintiff can show that the defendant "intentionally performed an act from which he knows, or should know, it is highly probable that harm will result.

## SEVENTH CLAIM FOR RELIEF
## CONVERSION
## (Against all Defendants)

66. Plaintiff repeats and realleges paragraphs 1 through 66.

67. Tami Abdollah's failure to protect Plaintiff's confidential LinkedIn confessions, coupled with her subsequent theft of emails, pictures and other unlawful acts of hacking, amounted to a reprehensible invasion of Plaintiff's privacy.

68. The theft of the LinkedIn confessions by Tami Abdollah directly contributed to the loss of the plaintiff's promising career, causing irreparable harm to Plaintiff's professional standing and reputation.

69. As a result of Tami Abdollah's actions and/or inactions, Plaintiff was damaged in an amount in excess of the jurisdictional limits of this Court.

70. Plaintiff seeks compensatory and punitive damages for the conversion of her emails and other social media content and/or intellectual property with particular emphasis on the stolen LinkedIn confessions, the withheld trial information and the resultant harm suffered by Plaintiff.

## PRAYER FOR RELIEF

71. To the extent permitted by law, Ms.Morrow's seeks the following relief against Defendants:

    (a) Compensatory and punitive damages against Tami Abdollah in the amount of USD 250,000,000;

    (b) Compensatory and punitive damages against USA Today in the amount of USD 100,000,000;

    (c) Compensatory and punitive damages against LinkedIn in the amount of USD 350,000,000;

    (d) Compensatory and punitive damages against the Federal Bureu of Investigations in the amount of USD 450,000,000;

    (e) Compensatory and punitive damages against John Des 1-10 in the amount of USD 50,000,000;

    (f) Compensatory and punitive damages against Genius Fund,Liam Palmieri, Chris Finelli and Ari Stiegler in the amount of USD 1,200,000,000;

    (g) Injunctive relief, including an order that the Defendants cease taking any actions relating to hacking Ms.Morrow's devices;

    (h) Reasonable costs and expenses; and,

    (i) Such other and further relief as the Court may deem just and proper.

Jury Trial Request
Ms. Morrow requests a trial by jury for each claim for relief and all triable issues
This, the 29th day of February, 2024.

Respectfully Submitted,

Andrea Morrow